Nelson, J.,
delivered the opinion of the Court.
Pleasant B. Taylor the ancestor of complainants, departed this life intestate in the year 1839, and James Walker was appointed his administrator in January, 1840. About the 6th of March, 1843, Walker filed a bill in the Chancery Court at Madisonville, to sell the tract of land descrioed in the pleadings., for the payment of debts due from the estate. Under a decree of the Court, the land was sold at public .sale on the ,26th of February, 1844, subject to the dower assigned to the widow, and Walker became the purchaser, at the price of fifty dollars; and a final decree was pronounced *737 on the 17th of March, 1846, vesting the title in him. The bill now before us was filed to set aside that sale. On the 10th of June, 1852, Walker conveyed the land in trust to Samuel Pride, to secure the payment of certain debts. In the progress of this cause, Pride, under leave from the Court, filed a cross bill for the purpose of setting up the deed of trust and having the land sold to satisfy the debts therein mentioned. The Chancellor dismissed the orginal bill, granted the relief prayed for in the cross bill, and the complainants appealed.
It appears that the land in controversy originally belonged to the defendant, Walker, who insists in his answer to the original bill, that some time before the death of his intestate he agreed verbally to convey it to the latter; that part of the purchase money was still due at the time of his intestate’s death; that, laboring under a misapprehension as to his own rights, respondent filed said bill as administrator; that he bought the land at the Master’s sale, in his personal and not in his representative character; that he subsequently purchased the dower estate allotted to the widow, and took possession soon after the decree, and has ever since held the land adversely, and that his title is protected by the statute of limitations of seven years.
For the complainants, it is insisted that the intestate had a good title to the land; that they were “all small children, and very young when their father died;” that they had no regular guardian; that the sale of the land, at the instance of the administrator, was void for want of personal service of process, and that the whole pro *738 ceeding, on the part of the administrator, was a fraudulent device to obtain the possession and title. It is further insisted that the defendant, Walker, purchased at the Master’s sale, in the character of administrator, and that he held the land in trust for complainants.
It is a settled law of this State, that a sale without service of process on an infant who has no regular guardian, is void, and that the want of such service cannot be waived by the appearance of a guardian ad litem. See 2 Swan, 197; 1 Swan, 75; Ibid, 484; 1 Head, 128. The application of the principle to a case in which the validity of the sale is directly attacked by or in behalf of the infants whose land was sold, is not affected by the ease of Hopper v. Fisher, 2 Head, 256, which was an action of' ejectment, in which an effort was made to impeach' the decree collatei’ally. In that case, the recital in the decree that the infants answered, by their guardian ad litem, was deemed sufficient, as against a naked trespasser, who had no interest in the land in dispute; but it was expressly said by the Court, that “we do not mean to question the rule that requires service or notice upon the parties, and that a decree contrary to the course of the Court, is void.” In the case before us, the decree of Sept. 18, 1843, ordering a sale, recites that the cause was heard upon the bill, and the answers of the guardian ad litem; but it is not assumed in the decree, nor does it appear in any part of the proceedings, that process was either issued against or served upon the minors. The rule docket shows that W. B. Williams was appointed guardian ad litem at May Buies, 1843, but does not show publica *739 tion or any issuance or service of process, as required in Robertson v. Robertson, 2 Swan, 197, and Crippen v. Crippen, 1 Head, 129. It should have shown that the issuance and service of the process preceded the appointment of the guardian ad litem; and, in a case like this, where the administrator was both petitioner and purchaser, every fact necessary to establish the utmost fairness in the sale, should be established affirmatively by the administrator, or any purchaser or claimant under him. As he does not show that there was personal service of process upon the minors, we hold that the sale was void.
We decide further, that the other grounds of defense relied upon, cannot be maintained.
1. In the Master’s report of the sale, it appears that the tract of land was “knocked off to James Walker, administrator aforesaid, for the sum of fifty dollars;” and we hold that this is evidence that he acted, in making the purchase, not in his personal, but in his official character. The decree subsequently vesting the title in him personally, was not in conformity to the Master’s repoit. It is not difficult to suppose that bidders, who might be unwilling to bid against a person acting for minor children, would be willing to bid against him when acting in his own right. The administrator, therefore, held the title, if any, which he acquired at the Master’s sale, as trustee, and not in his own right.
2. The complainants are not bound by the statute of limitations. Their ages are not established by any direct proof in the record. In the. bill filed by the administrator, it was stated that the children were all minors, having no guardian. In his answer to complainant's’ bill, *740 the administrator takes no notice of the statement that complainants were all small children, and very young, at the time of the sale. In Lafferty v. Turley, 3 Sneed, 157, it was held that an administrator is an express trustee, and that no statute of limitations will protect him against a proceeding to recover legacies or distributive shares due from him as such; and without deciding whether, in a case where the administrator purchases in his own name and for his own benefit, he is an express or implied trustee, we hold that, as he made the purchase in this case as administrator, the burthen of proof was' upon him to show that all the complainants are of full age, and that they have, respectively, obtained their majority for a period sufficiently long to create the bar of the statute of limitations. As no direct steps were taken against the land by the creditors, the presumption is, that the administrator continued to hold for the heirs; and it was incumbent on him to show a disclaimer, or its equivalent, within a sufficient time after they became of age to perfect his title by the statute of limitations-It is not shown in proof that he disrobed himself of the character of trustee, by giving complainants notice of his adverse holding.
3. We are constrained to regard the whole conduct of the administrator in relation to the tract of land in controversy as fraudulent. The evidence shows that P. B. Taylor, the intestate, held the actual possession of the land for about twelve years before his death. There is some conflict in the testimony as to whether he actually held a deed for the land from the defendant Taylor, and there is much testimony in the record, pro and eon, *741 as to the character of two of the witnesses who prove the existence of ■ a deed. Its probable existence is established by statements of two • other witnesses and the evidence as to Taylor’s admission, and we think there can be but little doubt of its existence, in view of the fact that "Walker in his bill as administrator, charged that Taylor died seized and possessed of the land, and described it accurately by metes and bounds; that the widow of Taylor states in substance the defendant, Walker, received from her all the husband’s valuable papers soon after his death; and that it is also in proof that Taylor was present when the Commissioners were engaged in alloting the dower, and furnished the boundaries of the land to them. It is possible that he may have obtained these from his old title papers, as he was formerly owner of the land; but he is unquestionably estop-ped by the statements in his own bill, which was sworn to, and his subsequent purchase at the Master’s sale, to deny the existence of his intestate’s. title. It was a gross fraud on his part, to attempt afterwards to deprive the minors of their inheritance. The deed of trust to Pride communicated no other or better title than Walker himself held.
Let the Chancellor’s decree be reversed and the title declared to be in complainants, who shall account for the amounts actually paid by Walker for the dower interest. Dismiss the cross bill, and remand the cause for an account against Walker as to the value of the rents and profits, out of which the amount actually paid for the dower interest shall be deducted.